UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

WELLS FARGO BANK, NATIONAL ASSOCIATION,

    Plaintiff,

vs.

ENTRUST EDUCATION TRUST/DEUK CHOI TRUSTEE, et al.,

    Defendants.

3:16-cv-00758-RCJ-CBC

**ORDER**

This case arises from a residential foreclosure by Meadowview Terrace Townhouse Association ("HOA") for failure to pay HOA assessments. Now pending before the Court is a motion by Defendant Entrust Education Trust/Deuk Choi Trustee ("Entrust") (ECF No. 48) to alter or amend this Court's Order Granting Plaintiff's Motion for Summary Judgement (ECF No. 44). The Court finds that any changes in existing law do not justify altering or amending summary judgment for Plaintiff and that this Court's Order was sufficiently clear that the HOA sale stands subject to Wells Fargo's deed of trust. Consequently, Entrust's motion is denied.

**I.    FACTS AND PROCEDURAL BACKGROUND**

In February 1998, Deanna Milton purchased the subject property located at 2605 Starks Way in Reno, Nevada ("the Property"). On January 24, 2007, a deed of trust signed by Ms. Milton was recorded against the Property, securing a loan in the amount of $140,000, and

identifying Option One Mortgage Corporation ("Option One") as beneficiary ("the DOT"). (Deed of Trust, ECF No. 32-2.) On June 18, 2014, as a result of the homeowner's failure to pay HOA fees, the HOA caused a lien for delinquent assessments to be recorded against the Property. Subsequently, a notice of default and election to sell ("NOD") was recorded on July 25, 2014, followed by a notice of foreclosure sale ("NOS") on November 8, 2014. The NOS indicated the Property would be sold at public auction on December 17, 2014. (Notice of Sale, ECF No. 32-6.) Accordingly, a sale was conducted on that date, and Defendant Entrust Education Trust/Deuk Choi Trustee ("Entrust")[1] purchased the Property for $51,100. (Foreclosure Deed, ECF No. 32-7.) Approximately two years later, in November 2016, Sand Canyon Corporation—successor entity to Option One—assigned the DOT to Plaintiff Wells Fargo. (Assignment, ECF No. 32-3.)

On December 28, 2016, Wells Fargo filed this action, asserting claims against Entrust and the HOA arising out of the foreclosure and sale of the Property aimed at establishing the continued validity of Wells Fargo's DOT. In July 2018, this Court granted summary judgment to Wells Fargo (Order ECF No. 44). Entrust now moves for this Court to alter or amend its judgment.

## II.   LEGAL STANDARD

Under Fed. R. Civ. P. 59(e), a party may move a court to amend its judgment within twenty-eight days after entry of the judgment. In general, there are four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent

---

1 In its summary judgment motion, Entrust noted that it has been incorrectly named in this action, and that its proper name is Entrust Education Trust, Kwangsun Choe, Trustee.

manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law. *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011). When a party seeks clarification of an order, it is typically treated as a motion under Fed. R. Civ. P. 59(e). The reason for this is such motions usually cannot be granted without altering or amending the language of the judgment. *See Birdsong v. Wrotenbery*, 901 F.2d 1270, 1272 (5th Cir. 1990). Here, Entrust argues that *SFR Investments Pool 1, LLC v. Bank of New York Mellon (SFR II)*, 422 P.3d 1248 (Nev. 2018) constitutes a change in controlling and requires this Court to alter or amend its Order awarding summary judgment to Plaintiff. In the alternative, Entrust seeks clarification whether the Order declared the entire HOA sale void or whether it allowed the sale to stand, subject to Wells Fargo's DOT.

## III. DISCUSSION

The Court finds that *SFR II* does not compel a different conclusion than the one reached in this Court's Order Granting Plaintiff's Motion for Summary Judgment.

### A. The Effect of *SFR II* on *Bourne Valley*

Regardless of any ruling by the Nevada Supreme Court, this Court is bound by *Bourne Valley* on all federal issues unless and until the Court of Appeals sitting en banc or the U.S. Supreme Court indicates otherwise. The Supreme Court has already once denied certiorari, *Bourne Valley Court Tr. v. Wells Fargo Bank, N.A.*, 137 S.Ct. 2296, 2297 (2017), despite the Nevada Supreme Court's intervening ruling contrary to *Bourne Valley* on the issue of state action, *see Saticoy Bay LLC v. Wells Fargo Home Mortg.*, 388 P.3d 970, 973–74 (Nev. 2017). The Court of Appeals' ruling on the federal issue of whether a Chapter 116 sale implicates state action under the Due Process Clause of the Fourteenth Amendment has not been abrogated. At most, the recent decision of the Nevada Supreme Court reinterpreting the relevant state statutes requires this Court to reexamine the due process issue anew.

**B. The Facial and As-Applied Constitutionality of Chapter 116**

This Court has previously analyzed and considered the facial and as-applied constitutionality of Chapter 116. However, it bears repeating here. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The *Mullane* Court ruled that under this standard notice by publication of an action to settle the accounts of a common trust fund was constitutionally insufficient to inform those beneficiaries whose names and addresses were known. *Id.* at 315; *see also, e.g.*, *Walker v. City of Hutchinson*, 352 U.S. 112 (1956) (ruling that publication was insufficient under the Due Process Clause to provide reasonable notice of condemnation proceedings to a landowner whose name was known). Likewise, a governmental body conducting a tax sale must provide notice to junior lienors under the standards of *Mullane*. *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 (1983). As the Court has noted, an HOA foreclosure sale under NRS 116.3116 is analogous to the tax sale in *Mennonite Board of Missions*:

> [A] mortgagee possesses a substantial property interest that is significantly affected by a[n HOA] sale. Under [Nevada] law, a mortgagee acquires a lien on the owner's property .... A mortgagee's security interest generally has priority over subsequent claims or liens attaching to the property, and a purchase money mortgage takes precedence over virtually all other claims or liens including those which antedate the execution of the mortgage. The [HOA] sale immediately and drastically diminishes the value of this security interest by granting the [HOA]-sale purchaser a lien with priority over that of all other creditors. Ultimately, the [HOA] sale may result in the complete nullification of the mortgagee's interest, since the purchaser acquires title free of all liens and other encumbrances . . . .
>
> . . .
>
> Neither notice by publication and posting, nor mailed notice to the property owner, are means "such as one desirous of actually informing the [mortgagee] might reasonably adopt to accomplish it." Because they are designed primarily to attract

> prospective purchasers to the tax sale, publication and posting are unlikely to reach those who, although they have an interest in the property, do not make special efforts to keep abreast of such notices. Notice to the property owner, who is not in privity with his creditor and who has failed to take steps necessary to preserve his own property interest, also cannot be expected to lead to actual notice to the mortgagee. The County's use of these less reliable forms of notice is not reasonable where, as here, "an inexpensive and efficient mechanism such as mail service is available."
>
> Personal service or mailed notice is required even though sophisticated creditors have means at their disposal to discover whether [HOA dues] have not been paid and whether [HOA] sale proceedings are therefore likely to be initiated. In the first place, a mortgage need not involve a complex commercial transaction among knowledgeable parties, and it may well be the least sophisticated creditor whose security interest is threatened by a tax sale. More importantly, a party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation.

*Id.* at 798–99 (citations omitted). In summary, a foreclosing entity must make reasonable attempts—meaning attempts that a person desirous of actually informing the interested party might take, e.g., via personal service or mail—to notify known or reasonably identifiable parties who stand to lose security interests; publication or other notice schemes requiring special efforts of interested parties are not usually reasonable. *Id.*

The Court of Appeals has ruled that Chapter 116 foreclosure sales constitute state action under the Due Process Clause. The Nevada Supreme Court's recent ruling as to what notice state law previously required does not affect the applicability of the Due Process Clause to Chapter 116 sales but only the analysis of whether Chapter 116 was previously sufficient under the Due Process Clause. The question is whether the notice previously required was notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314. The Court of Appeals in *Bourne Valley* determined that because Chapter 116 required a first deed of trust holder to affirmatively request notice in order to receive it, the statutes were facially invalid under the Due Process Clause. The Nevada Supreme Court has now ruled that notice to a first

deed of trust holder of the fact of an impending Chapter 116 sale was required without opting in. But that is not necessarily enough to satisfy due process "under all the circumstances" in the unique context of Chapter 116.

Where a lienor foreclosing with the power of the state makes reasonable attempts to notify interested parties of the time and place of the sale, it usually satisfies its obligations under the Due Process Clause without more. That is because in a typical situation, e.g., where a municipality seeks to foreclose a tax lien, the lien being foreclosed is senior to all other encumbrances by law, and notice of an impending tax sale puts interested parties on notice that if the entire tax delinquency (as specified in the notice of default and/or notice of sale) is not satisfied before the sale, all other security interests against the property will be extinguished. A junior lienor therefore has the opportunity to present his objections upon mere notice of the time and place of sale. He knows that he must satisfy the entire delinquency to prevent the sale and the extinguishment of his security interest. But an HOA lien under Chapter 116 is atypical in a fundamental and critical respect. It consists of two legally distinct pieces: one senior to a first deed of trust ("the superpriority piece"), and one junior thereto ("the subpriority piece"). *SFR Invs. Pool 1, LLC v. U.S. Bank, N.A.* (*SFR I*), 130 Nev. 742, 334 P.3d 408, 411 (2014). The Nevada Supreme Court has declined to address whether Chapter 116 previously required the superpriority piece to be specified in the notice of sale or otherwise, *SFR II*, 422 P.3d at 1250 n.2, 1253 n.5, but it is clear that the statute the *SFR II* Court determined was incorporated into the previous notice scheme under Chapter 116 required only "notice of time and place of sale," Nev. Rev. Stat. § 107.090(4).

Because of the dual nature of a Chapter 116 lien, notice only of the total amount of such a lien is not necessarily constitutionally sufficient under all the circumstances as to a first deed of trust holder, whose lien is partially senior to the HOA's lien. First deed of trust holders cannot

reasonably have been expected to satisfy not only the superpriority piece, but also the subpriority piece. As a general matter, it is not reasonable to require a lienholder to satisfy a junior lien in order to protect a senior interest. It is particularly unreasonable where the subpriority piece greatly exceeds the superpriority piece. But that is precisely what a notice scheme not mandating that the superpriority piece of a mixed-priority lien be specified forces a mixed-priority lienholder to do. A notice lacking this critical information might not be constitutionally reasonable, because it does not give the interested party the information required to protect his interest without paying additional amounts for which he is not liable and which are junior to his own interest, or without taking an incredible risk that his estimation of the superpriority piece will be found to have been insufficient in a later proceeding. Such circumstances are not present in traditional foreclosures, where the lien being foreclosed is of unified priority and is specified in the notice of default, the notice of sale, and/or at the sale itself.

It could be argued that bare notice of an impending sale is enough to satisfy due process. After all, notice of an impending sale warns a first deed of trust holder that he must take action of some kind to prevent losing his interest, and that may require him to make further inquiries. But in many of these cases where a first deed of trust holder actually received notice of an impending sale, directly or indirectly, it has made such further inquiries, requesting the HOA or its agent to identify the superpriority piece so that it may protect the first deed of trust by tendering that amount prior to the sale. The Court cannot recall a case where an HOA or its agent has done anything but refuse when so asked, and certainly no case where the superpriority piece was specified on the initiative of the HOA or its agent, whether in the notice of sale or some other writing, or even by the auctioneer at the sale itself. Events occurring after notice is initially dispatched can be relevant. Just as one "desirous of actually informing" an interested party would not simply say "I tried" after watching a postman drop a notice down a storm drain, *Jones*

*v. Flowers*, 547 U.S. 220, 229 (2006), a person actually desirous of giving an interested party with a mixed-priority lien the opportunity to cure the superpriority piece of the default would not simply say "no" or "guess" when asked to specify the superpriority piece after providing notice only of the total delinquency. A person "actually desirous" of giving a first deed of trust holder the information necessary to protect his interest would specify the superpriority piece, at least where requested. It may or may not be unreasonable to provide bare notice of a sale and await a first deed of trust holder's inquiry as to the superpriority piece, but it is unreasonable not to specify the superpriority piece if asked. The Court finds that where a notice of sale specifies only the total amount of a default that by law is only partially in priority to another's lien, the refusal of the foreclosing entity to specify the superpriority amount to the other lienholder when so requested is a denial of the opportunity to present objections. Despite initial efforts, "[f]ailure to follow up [is] unreasonable" where a need to follow up has become evident. *Id.* A request to specify the superpriority piece of a Chapter 116 lien—the only portion of the lien that must be satisfied to protect the first deed of trust—makes clear the need to follow up. *U.S. Bank N.A. v. Thunder Properties, Inc.*, No. 316CV00700RCJCBC, 2018 WL 6092627, at *2–4 (D. Nev. Nov. 21, 2018); *US Bank, N.A. v. Renovista Ridge Master Prop. Owners Ass'n*, No. 317CV00283RCJ VPC, 2018 WL 6169028, at *3 (D. Nev. Nov. 7, 2018).

### C. The Facts of Notice in the Present Case

Ultimately, the Court need not in this case determine whether the previous notice scheme as recently reinterpreted remains constitutionally suspect, either facially or as applied here, because the evidence previously submitted does not establish that Defendants provided adequate notice to satisfy due process.

First, although Entrust strenuously argues that Plaintiff had actual notice, Entrust has not explained how Plaintiff gained knowledge of the foreclosure sale. This Court has made clear in

two recent Orders that a foreclosing entity must make reasonable attempts to provide notice, "meaning . . . personal service or mail . . . to notify known or reasonably identifiable parties who stand to lose security interests; publication or other notice schemes requiring special efforts of interested parties are not usually reasonable." *Id.* Entrust has provided no evidence that Defendants gave such notice. Instead, Entrust argues that Plaintiff found out about the foreclosure sale, and therefore no due process issue exists. However, Entrust has pointed to no statute or case law that supports the proposition that actual notice in Nevada cures the failure to provide notice. Entrust has not rebutted Plaintiff's allegation that the HOA sale occurred without notice to the lender of the sale and a right to cure the delinquent assessment and the superpriority lien, if any.

Second, even assuming that knowledge of the sale cured Defendants' failure to provide notice (or proof thereof), the notice was constitutionally deficient, because it failed to specify the superpriority amount. This Court has determined that mere notice of an impending sale is not enough. Due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314. Thus, in addition to proper means of service, a party must provide enough information to allow another party to meaningfully object. Here, the HOA sale occurred without notice to the lender what portion of the lien, if any, constituted a super-priority lien, and the HOA failed to specify whether it was foreclosing on the super-priority portion of its lien, if any, or under the non-super-priority portion of the lien. This knowledge was necessary to meaningfully object, since the superpriority amount was the only portion of the HOA's lien that could have extinguished the lender's earlier interest in the property and was therefore the only amount that the lender had to pay. As this Court previously held:

> The Joint Editorial Board for Uniform Real Property Acts has opined that if the superpriority amount is redeemed prior to an HOA sale, a subsequent HOA sale

based only on subpriority amounts transfers title subject to the first mortgage. (*See* Joint Editorial Board Report 12, June 1, 2013, ECF No. 23-15). Even in the absence of such an opinion, that result is legally obvious. If the superpriority portion of an HOA lien is redeemed prior to foreclosure, the foreclosure proceeds based on the subpriority portion of the HOA lien. A first deed of trust is senior to the subpriority portion of the HOA lien and is therefore not extinguished by the former's foreclosure.

*Nationstar Mortg., LLC v. SFR Investments Pool 1, LLC*, 184 F. Supp. 3d 853, 859 (D. Nev. 2016). Thus, this information is more than a critical component of a larger amount due, from the perspective of a lender, it represents the entirety of the amount owed that a lender must pay. Failure to provide that amount during discussions about what a lender is required to pay is not notice "actually desirous" of giving a first deed of trust holder the information necessary to protect his interest. Here, by only providing the total balance, which included dues, fines, late charges, attorney's fees, management fees, and collection costs, and by stating that the lender was required to pay the amount due in its entirety, the HOA refused to provide the superpriority amount—the actual amount that the lender needed to pay to preserve its interest. This is constitutionally inadequate.

Because state action is involved here, as determined by the Court of Appeals, the situation is akin to a private citizen asking the government what he owes to preserve a property interest. Surely, it would not satisfy due process for the government to intentionally refuse to provide the amount owed, much less to demand a substantially larger amount than the one owed, thereby forcing the citizen into a Hobson's choice: either pay a higher amount that is not required or guess by paying a lower amount and risk losing the property interest. Defendants opted for the latter route here and stated that the lender had to pay the entire balance of $4,460.09, which is clearly much larger than the superpriority amount that the lender needed to pay to protect its interest.

///

By law, a homeowner's association may only collect as a part of the superpriority lien nuisance abatement charges incurred by the association and nine months of common assessments due prior to the institution of an action to enforce the lien. *Horizons at Seven Hills v. Ikon Holdings*, 373 P.3d 66, 72 (Nev. 2016) ("Taking into consideration the legislative intent, the statute's text, and statutory construction principles, we conclude the superpriority lien granted by NRS 116.3116(2) does not include an amount for collection fees and foreclosure costs incurred; rather it is limited to an amount equal to the common expense assessments due during the nine months before foreclosure."). Here, the $4,460.09 amount that Defendants claimed that the lender had to pay included fines, late fees, dues, attorney's fees, and costs of collection that are not allowed as part of a superpriority lien under Nevada law.

Moreover, in addition to their refusal to provide the superpriority amount and demand that the lender pay a higher amount, Defendants stated that the lender could not pay a lower amount and specify that the payment was to extinguish the superpriority portion of the lien. Defendants stated in their correspondence that "demands that the [payment] funds be applied to take a specific legal effect (ex: 'Apply payment to the super-priority amount' or 'Payment shall be applied to extinguish the super-priority amount') are demands for settlement and warranty, which may be rejected by the Association." (Letter 6, ECF No. 31-3.) That statement is contrary to Nevada law and unequivocally represents Defendants unwillingness to provide the superpriority amount or even accept an amount paid to satisfy the superpriority portion of the lien. Accordingly, Defendants' conduct fell below the standard required to satisfy due process. In sum, Defendant Entrust has not demonstrated that Defendants provided adequate notice to satisfy due process, and therefore, Entrust has not shown that changes in controlling law compel a different result than the one that the Court already reached.

///

**CONCLUSION**

IT IS HEREBY ORDERED that Entrust's Motion to Alter or Amend Judgment is (ECF No. 48) is DENIED.

IT IS SO ORDERED.

Dated: This 11th day of March, 2019.

_____
ROBERT C. JONES
United States District Judge